**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re CHINA XD PLASTICS COMPANY LIMITED Securities Litigation.<br><br>This Document Relates to: All Actions | Case No. 14-cv-05308-GBD<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT CHINA XD PLASTICS COMPANY LIMITED'S**
**MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

**SHEARMAN & STERLING LLP**
Jerome S. Fortinsky
Brian G. Burke
Marion R. Harris
599 Lexington Avenue
New York, New York 10022
Tel.:  212-848-4000
Fax:  212-848-7179
jfortinsky@shearman.com
brian.burke@shearman.com
marion.harris@shearman.com

*Attorneys for Defendant*
*China XD Plastics Company Limited*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................................... 1

BACKGROUND .............................................................................................................................. 5

    A.    China XD And Its Regulatory Filings ....................................................... 5

    B.    The Bleecker Street Research Report ....................................................... 5

    C.    The Plaintiffs' Allegations ........................................................................ 6

ARGUMENT .................................................................................................................................... 8

    I.    THE PLAINTIFFS FAIL TO PLEAD A MATERIAL MISSTATEMENT ........ 10

        A.    The Allegations Regarding China XD's Financial Statements Are Based On A Flawed Comparison Of SEC And SAIC Filings ................. 11

        B.    The Allegations Regarding China XD's R&D Capabilities And Work Force Fail To Allege A Material Misstatement ....................................... 16

    II.    THE PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION .............................. 18

    III.    THE PLAINTIFFS FAIL TO PLEAD FRAUDULENT INTENT ..................... 21

CONCLUSION ............................................................................................................................... 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*, No. MDL-11-2302-GW(CWx), 2012 WL 1983341 (C.D. Cal. May 31, 2012) ....................................15

*Alaska Laborer Emp'rs Ret. Fund v. Scholastic Corp.*, No.07 Civ. 7402, 2010 WL 3910211 (S.D.N.Y. Sept. 30, 2010)........................................................21, 22

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).........................................................................8, 9

*ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F. 3d 87 (2d Cir. 2007) ...........................9, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................8, 9

*Brass v. Am. Film Techs., Inc.,* 987 F.2d 142 (2d Cir. 1993) .........................................5

*Chambers v. Time Warner, Inc.,* 282 F.3d 147 (2d Cir. 2002).....................................5, 9

*In re China Valves Tech. Sec. Litig.*, 979 F. Supp. 2d 395 (S.D.N.Y. 2013)................15

*Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42 (2d Cir. 1991) ...........................5

*ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.,* 553 F.3d 187 (2d Cir. 2009).........................................................................................22

*In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266 (S.D.N.Y. 2006) ...........................19

*Gallop v. Cheney*, 642 F. 3d 364 (2d Cir. 2011).........................................................13

*Ganino v. Citizens Utils. Co.*, 228 F.3d 154 (2d Cir. 2000) ...........................................9

*Garvey v. Arkoosh*, 354 F. Supp. 2d 73 (D. Mass. 2005) .............................................11

*Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (June 23, 2014)..............9

*Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547 (S.D.N.Y. 2012) .................14

*Johnson v. Sequans Commc'ns S.A.*, No. 11 Civ. 6341 (PAC), 2013 WL 214297 (S.D.N.Y. Jan. 17, 2013)..............................................................................................17

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001)...........................................................22

*Kleinman v. Elan Corp., plc*, 706 F.3d 145 (2d Cir. 2013)..........................................10

*In re L&L Energy, Inc. Sec. Litig.*, 908 F. Supp. 2d 1147 (W.D. Wash. 2012)......15, 16

*Lasker v. N.Y. State Elec. & Gas Corp.*, 85 F.3d 55 (2d Cir. 1996) ...............................................17

*Lentell v. Merrill Lynch & Co.,* 396 F.3d 161 (2d Cir. 2005).................................................19, 20

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ................................................................10, 22, 23

*Prime Mover Capital Partners, L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp.
    2d 673 (S.D.N.Y. 2012), *aff'd* 548 F. App'x 16 (2d Cir. 2013) ......................................20, 21

*In re PXRE Group, Ltd. Sec. Litig.*, 600 F. Supp. 2d 510 (S.D.N.Y. 2009), *aff'd*
    *sub. nom. Condra v. PXRE Grop Ltd.*, 357 F. App'x 393 (2d Cir. 2009) .............................22

*In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527 (S.D.N.Y. 2007)...........................................19

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ............................................................10, 16, 22

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000).........................................................................9

*In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001) .......................................................10

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) ..................................................10

*Suez Equity Invs., L.P. v. Toronto-Dominion Bank,* 250 F.3d 87 (2d Cir. 2001) ........................19

*In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247 (S.D.N.Y. 2008) ............................21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)...............................................22

*Williamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744
    (S.D.N.Y. 2011).....................................................................................................................19

*In re Winstar Commc'ns*, No. 01 Civ. 11522, 2006 WL 473885 (S.D.N.Y. Feb.
    27, 2006) ...............................................................................................................................19

*In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 DLC, 2005 WL 375314
    (S.D.N.Y. Feb. 17, 2005)......................................................................................................20

*In re Xinhua Fin. Media Ltd. Sec. Litig.*, No. 07 Civ. 3994, 2009 WL 464934
    (S.D.N.Y. Feb. 25, 2009)......................................................................................................16

*Zerger v. Midway Games, Inc.*, No. 07 C 3797, 2009 WL 3380653 (N.D. Ill. Oct.
    19, 2009)................................................................................................................................17

**Statutes and Rules**

17 C.F.R. § 240.10b-5...................................................................................................................9

15 U.S.C. § 78j(b)........................................................................................................................9

15 U.S.C. § 78u-4(b) ..................................................................................................10, 22

Fed. R. Evid. 201 ................................................................................................................5

**Other Authorities**

Serena Ng, *Moving the Market – Tracking the Numbers / Street Sleuth: Reverse
    Mergers Move Into Fashion – Small Companies Gobble Up Already-Public
    Concerns as Cheap Way to Get Listed*, Wall St. J., June 29, 2005 ........................................11

*Siebert Goes Public by an Unusual Route*, N.Y. Times, Feb. 3, 1996, § 1, at 39 ........................11

Ted Turner & Bill Burke, *Call Me Ted* (2008) ..........................................................................11

Defendant China XD Plastics Company Limited ("China XD" or the "Company") respectfully submits this memorandum of law in support of its motion to dismiss the Consolidated Class Action Complaint (the "Complaint" or "Compl.") (ECF No. 19)[1] with prejudice pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The original complaint in this securities fraud action was filed five days after Bleecker Street Research published an online report questioning the financial performance of China XD. The plaintiff who filed that complaint essentially cut and pasted the allegations from Bleecker Street Research's report (the "Bleecker Street Report" or the "Report") directly into the body of the complaint and purported to assert securities fraud claims on the basis of those allegations.  In the weeks that followed the Report's publication, however, Bleecker Street retracted most of the allegations that formed the basis of the original complaint.  Specifically, of the five bullet-point allegations presented in the opening summary of the Report, Bleecker Street withdrew four.  But since the plaintiffs already had a lawsuit on file that copied the Report nearly verbatim, Bleecker Street's retreat put them in an awkward position.  Their lawsuit remained alive, but their substantive allegations did not.  Instead of just dismissing their lawsuit, however, the plaintiffs chose to cobble together an entirely new set of allegations in an attempt to salvage their case. Those are the groundless allegations currently before the Court.

The allegations generally fall into two categories:  allegations regarding the revenue, net income and tax expense reported in China XD's filings with the U.S. Securities and Exchange Commission (the "SEC") for 2013 and the first quarter of 2014, and allegations regarding its research and development ("R&D") work force in China.  With respect to the first category, the

---

[1]   For reference, the Consolidated Class Action Complaint is submitted herewith as Exhibit A to the Declaration of Jerome S. Fortinsky (the "Fortinsky Decl.").

plaintiffs assert that China XD maintained two sets of financial statements—one set filed with the SEC in the United States, and one set filed with the State Administration of Industry and Commerce ("SAIC") in China.  The plaintiffs purport to compare the SEC and SAIC filings and contend that the smaller figures in the SAIC filings are accurate and the larger figures in the SEC filings are fraudulent.  But the reason for the discrepancy is evident on the face of the Complaint. In a footnote buried among the Complaint's more than 100 paragraphs of allegations, the plaintiffs acknowledge that they have excluded the SAIC filings of four subsidiaries of China XD, even though the financial statements of those four subsidiaries are consolidated into China XD's SEC filings.  In other words, the plaintiffs are alleging securities fraud on the basis of differences one would expect to see when comparing, on the one hand, a parent company consolidated with all its subsidiaries, and, on the other, an incomplete subset of its subsidiaries. This type of pleading does not even satisfy Rule 8's lenient notice pleading standard, let alone Rule 9's heightened standard for pleading fraud.  The plaintiffs attempt to downplay this omission by assuming, without factual support, that the omitted subsidiaries generated no revenue.  Elsewhere in the Complaint, however, the plaintiffs plead facts that suggest exactly the opposite.

Regarding the allegations about China XD's R&D work force, the Complaint relies on confidential witnesses who allegedly claim that China XD had only between 30 and 50 R&D employees in China instead of between 237 and 243, as stated in the Company's SEC filings. But the plaintiffs are counting the employees at only two of China XD's subsidiaries, whereas the numbers in the SEC filings refer to employees at all subsidiaries of China XD.  As with the SEC and SAIC filings, the plaintiffs are making a classic apples-to-oranges mistake.  The plaintiffs also challenge generic Company statements about the strength and expertise of its

2

R&D capabilities, but those allegations are nothing more than what the Second Circuit has described as "puffery," and accordingly cannot support an accusation of securities fraud.  This failure to identify even a single false statement is by itself sufficient to require the dismissal of this case.

Completely independent of the plaintiffs' failure to plead falsity, the Court should also dismiss the Complaint because it does not plead loss causation, which, like the making of a false statement, is an essential element of the only cause of action that the plaintiffs assert against the Company:  violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5.  To plead loss causation, a plaintiff must allege that when the alleged misstatements were revealed to the public, the price of the stock dropped and caused the plaintiff to suffer a loss.  The plaintiffs here claim that their loss was caused when the Bleecker Street Report was published online on July 10, 2014, after which China XD's stock price allegedly fell $1.17.  But the allegations in the Bleecker Street Report are not the same as those in the Complaint.  As noted above, the plaintiffs came up with a completely new set of allegations once Bleecker Street withdrew most of what it originally said about China XD.  The Report did not even mention, let alone reveal the purported falsity of, the financial statements in China XD's SEC filings for 2013 and 2014, nor did the Report mention, let alone reveal the purported falsity of, the number of employees in China XD's R&D work force.  The Report therefore cannot serve as a basis to plead loss causation for the statements at issue in the operative complaint.  Even if the Complaint alleged inaccuracies in China XD's 2013-14 financial statements or R&D headcount, the plaintiffs have not alleged that their loss—*i.e.*, the drop in China XD's stock price following the publication of the Report—was caused by the disclosure of those inaccuracies. Indeed, those purported inaccuracies have never been made public except in the Complaint—that

3

is, in the consolidated complaint that the plaintiffs filed in this case in February 2015. The plaintiffs plainly do not contend that the February 2015 "disclosures" had any impact on the stock price. The element of loss causation is therefore absent as a matter of law, and the Complaint must be dismissed.

The Court should also dismiss the Complaint for yet a third independent reason: the plaintiffs do not allege that the purported inaccuracies were a fraud. To plead the essential element of fraudulent intent, or scienter, the plaintiffs must allege facts showing either strong circumstantial evidence of conscious misbehavior or recklessness, or that the defendants had both motive and opportunity to commit fraud. The plaintiffs make no attempt to plead circumstantial evidence of conscious misbehavior or recklessness, and the only allegation relating to motive and opportunity is the kind of routine business motive—the desire to appear more profitable—that the Second Circuit has repeatedly rejected as insufficient to establish scienter. In any event, the plaintiffs' sole contention is that the Company wanted to appear more profitable to generate investor interest in advance of a bond offering. But the bond offering closed in February 2014, and the earliest of the alleged misstatements were made on March 26, 2014, when China XD filed its 2013 10-K. Because the alleged misstatements were made after the close of the bond offering, they obviously could not have been aimed at improving the Company's appearance in advance of the offering.

The plaintiffs in this action have not identified any misstatement, nor pleaded loss causation or fraudulent intent. The Court accordingly should dismiss the Complaint with prejudice.

4

# BACKGROUND

## A.      China XD And Its Regulatory Filings

China XD is a Nasdaq-listed company with its principal place of business in Harbin,

China.  (Compl. ¶¶ 15, 90(a).)  Through its Chinese subsidiaries, China XD engages in the

research, development, manufacture and sale of modified plastics primarily for use in the

automotive industry.  (*Id*. ¶ 15.)  In the United States, China XD, the publicly listed parent

company, files a consolidated financial statement with the SEC that combines the financial

statements of all of its Chinese subsidiaries; in China, by contrast, each of China XD's Chinese

subsidiaries files a separate report with the SAIC that includes only that subsidiary's financial

statement.  (*See* Compl. at 13, n.17; ¶¶ 36, 50-51.)

## B.      The Bleecker Street Research Report

On July 10, 2014, Bleecker Street Research posted a report on the Internet titled "China

XD Plastics: When the Numbers Don't Add Up, There's Over 80% Downside."  (Fortinsky

Decl., Ex. B.)[2]  The Bleecker Street Report claimed that China XD's gross margins were

"substantially higher" than those of its competitor, Guanghzhou Kingfa Science & Technology,

Ltd. ("Kingfa"), although China XD's publicly reported R&D spending was supposedly

"relatively miniscule" R&D spending compared to Kingfa.  (*Id*. at 2.)  According to Bleecker

---

[2]     The Court may take judicial notice of the Bleecker Street Report without converting this motion to dismiss into
a motion for summary judgment because the report is repeatedly cited in the Complaint.  (*See* Compl. ¶¶ 9, 54,
77.)  *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) ("[O]n a motion to dismiss, a court
may consider 'documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in
bringing suit.'") (*quoting Brass v. Am. Film Techs., Inc.,* 987 F.2d 142, 150 (2d Cir. 1993)); *Cortec Indus., Inc.
v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in
the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a
Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.").  Similarly, the Court may consider the
other exhibits cited herein because they are publicly available documents subject to judicial notice.  *See Cortec
Indus., Inc.,* 949 F.2d at 47 (a district court deciding a motion to dismiss "may review and consider public
disclosure documents required by law to be and which actually have been filed with the SEC"); *Brass,* 987 F.2d
at 150 (when determining the sufficiency of plaintiffs' claim under Rule 12(b)(6), court may consider matters of
which judicial notice may be taken); Fed. R. Evid. 201.

Street, Kingfa spent between two and five percent of its revenues on R&D, while China XD spent between two and 3.6 percent of its revenues on R&D.  (*Id*.)  Bleecker Street also questioned the accuracy of China XD's financial statements for the years 2008-2010, inclusive (*see id*. at 8-10).  The Bleecker Street Research Report did not question China XD's financial statements for 2013 or 2014 nor the Company's statements about its R&D work force.

Following the July 10, 2014 publication of the Bleecker Street Report, the Report's author, by his own account (set forth at the end of the current, revised version of the Report), was contacted by counsel for China XD, who identified several inaccuracies and inconsistencies in the report.  (Fortinsky Decl., Ex. C at 7.)  The author subsequently retracted several parts of the Report.  Specifically, whereas the original Report presented five bullet points summarizing the Report's conclusions, the revised Report contained merely one bullet point, reflecting the degree to which the author had pared back the Report's allegations.[3]  (*Compare* Fortinsky Decl., Ex. B *with* Fortinsky Decl., Ex. C.[4])  The author removed the section titled "SAIC Filings from 2008-2010 Did Not Match SEC Filings" and ultimately concluded only that "[China XD's] Gross Margins Are Substantially Higher Than Its Competitor."  (Fortinsky Decl., Ex. C at 1.)

### C.    The Plaintiffs' Allegations

The plaintiff in the first complaint in this consolidated action filed suit on July 15, 2014, five days after the Bleecker Street Report was first published online.  Another plaintiff filed a separate complaint a day later.  The allegations in these initial complaints copied the allegations in the Bleecker Street Report, and the publication of the Report was alleged in both complaints to

---

[3]    Both versions of the Report begin with two bullet-point summaries.  The first, under the heading "Summary," was pared back from four bullet points to one; the second, under the heading "China XD Plastics Company," was pared back from five bullet points to one.

[4]    For the Court's convenience, a comparison of the July 10, 2014 Bleecker Street Report with the final revised report is attached as Exhibit D to the Declaration of Jerome S. Fortinsky.

be the event that caused the plaintiff's loss.  (*See Yang* Compl., 14-cv-5308, ECF No. 2 ¶¶ 33-37; *Tompkins* Compl., 14-cv-5359, ECF No. 1 ¶¶ 34-38.)

Following the Court's appointment of Terry Frishkorn and James Wang as lead plaintiffs, the currently operative complaint was filed on February 17, 2015.  Rather than copying from the Bleecker Street Report (which, as revised, was a shadow of its original version), the Complaint alleges that China XD's 10-K for 2013 and 10-Q for the first quarter of 2014 included two categories of false statements:  "statements about China XD's revenues, net income, and tax expense; and statements about its workforce, principally about its research & development ("R&D") workforce."  (Compl. ¶ 33.)  The Complaint further alleges that China XD's stock price fell $1.17 on the day that the Bleecker Street Report was published online.  (*Id*. ¶ 9.)  The plaintiffs do not allege that the Bleecker Street Report revealed to the market any of the misstatements alleged in the Complaint.

With respect to the first category of alleged misstatements—"statements about China XD's revenues, net income, and tax expense"—the plaintiffs claim that China XD "keeps two sets of books"—an "accurate set" filed with the SAIC in China and an "inflated set" filed with the SEC in the United States.  (*Id* . ¶ 47.)  The plaintiffs purport to give a side-by-side comparison of the financial figures that China XD files with the SEC with the figures that China XD's subsidiaries file with the SAIC in China, and assert that the lower figures in the SAIC filings are accurate and the higher figures in the SEC filings are inflated.  (*Id*.)  In a footnote, the plaintiffs acknowledge that their comparison does not include the SAIC filings of four of the Company's subsidiaries in China on the basis of the plaintiffs' unsupported assumption that those subsidiaries do not generate any revenues.  (*See id*. at 13, n.17.)

Regarding statements about the Company's R&D work force, the plaintiffs claim that China XD exaggerated its "strong R&D capabilities," "advanced technologies" and "technological expertise," and overstated the number of R&D employees it has in China.  (*See id*. ¶¶ 62-76.)  These allegations rely on information supposedly provided by confidential witnesses who are alleged to be former China XD employees.  (*Id*. ¶¶ 44, 70.)  The plaintiffs, however, make no reference to the various R&D awards that China XD has won, although these awards are noted in the same SEC filing that allegedly contains false statements about China XD's R&D technologies.  (*See, e.g.*, 2013 10-K, Fortinsky Decl. Ex. E, at 39 ("[t]he government of China . . . has given Xinda Group [a wholly owned subsidiary of China XD] the 'Most Valuable High Tech in China' award.")  The plaintiffs provide a table describing the role in the Company allegedly played by each former employee, and the period during which the former employee allegedly worked for the Company.  Four of the confidential witnesses apparently did not work for the Company during the class period, and none work there now.

The plaintiffs assert securities fraud claims under Section 10(b) of the Exchange Act and SEC Rule 10b-5 against China XD and five of its officers and directors, and assert control person claims under Section 20(a) of the Exchange Act against all individual defendants.

## ARGUMENT

To survive a motion to dismiss, a complaint filed in federal court "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  This standard is satisfied only "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."  *Id.*  While the Court must accept well pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor, it need not accept as true conclusory allegations

or legal conclusions pleaded as fact. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002); *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555).  Moreover, in ruling on a motion to dismiss, the Court is not limited to the face of the complaint.  The Court "may [also] consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing suit." *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F. 3d 87, 98 (2d Cir. 2007) (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000)).

Section 10(b) of the Exchange Act makes it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe."  15 U.S.C. § 78j(b).  Under SEC Rule 10b-5(b), it is unlawful for any person to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made . . . not misleading."  17 C.F.R. § 240.10b-5.  To state a claim under Section 10(b) and Rule 10b-5, a plaintiff must allege:  (i) that the defendant made a material misrepresentation or omission; (ii) with fraudulent intent; (iii) in connection with the purchase or sale of securities; (iv) that the plaintiff relied on the material misrepresentation (or omission); (v) an economic loss sustained by the plaintiff; and (vi) a causal connection between the material misrepresentation (or omission) and the plaintiff's loss, which is usually referred to as "loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2407 (June 23, 2014); *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000).

Under Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a plaintiff alleging fraud must "(1) specify the

statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)); *ATSI Commnc'ns*, 493 F.3d at 99.  The PSLRA also requires that "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  Finally, because fraudulent intent, or "scienter," is a required element of a Section 10(b) claim, the plaintiff must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A).

## I.      THE PLAINTIFFS FAIL TO PLEAD A MATERIAL MISSTATEMENT

It is axiomatic that a plaintiff must identify a misstatement to plead a claim for securities fraud.  A plaintiff must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading."  *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69 (2d Cir. 2001) (alteration in original).  To plead falsity, "plaintiffs must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so."  *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004); *accord Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152-53 (2d Cir. 2013).

The plaintiffs here have failed to meet this threshold requirement with respect to both categories of misstatements alleged in the Complaint.  First, the allegations concerning China XD's revenues, profit and taxes in 2013 and 2014 are based on an analysis that omits four of the Company's subsidiaries in China.  Second, the allegations concerning China XD's R&D work force are based on a mistake by the plaintiffs as to what the Company's 2013 10-K says about its R&D headcount.  The Court can dismiss the Complaint on the basis of these errors alone.

### A.    The Allegations Regarding China XD's Financial Statements Are Based On A Flawed Comparison Of SEC And SAIC Filings

In trying to fashion an argument as to why China XD's public statements about its revenues and profits are false, the plaintiffs devote great attention to peripheral points but virtually ignore the huge hole in the center of their argument.  The plaintiffs include a table comparing the numbers in the Company's SEC and SAIC filings and pages of allegations describing the accounting standards in China and the United States.  (Compl. ¶¶ 48-61.)  They speculate as to why a Chinese company might have reason to lie in its SEC filings but would not dare do so in its SAIC filings.  (*Id*. ¶ 49 *et seq*.)  They even offer a whole section describing the phenomenon of companies going public through a reverse merger.[5]  (*Id*. ¶¶ 2, 25.)

Yet, in a lone footnote buried at the bottom of page 13, the plaintiffs calmly acknowledge that they did not bother to include the SAIC filings of *four* subsidiaries of China XD in their comparison of alleged differences between China XD's SEC and SAIC filings.  The plaintiffs admit that they obtained the SAIC filings of "all of China XD's subsidiaries that have filed them, *other than those responsible for China XD's Sichuan subsidiary—i.e.*, Sichuan Xinda Enterprise Group Co. Ltd., Sichuan Xinda Group Meiyuan Enterprise Management Service Co., Sichuan Xinda Group Software Development Co. Ltd., and Sichuan Xinda Group Sales Co. Ltd.

---

[5]    The plaintiffs make much of the fact that "China XD came to [the] U.S. capital markets through a reverse merger." (Compl. ¶¶ 25-28.)  A "reverse merger," according to the plaintiffs, is a transaction in which a non-operating publicly traded company "buys" a closely held company that is seeking to go public and the shareholders in the closely held company receive substantially all of the shares of the publicly traded company. (*Id.* ¶ 26.)  Some of the market's most prestigious and well-known companies have gone public through reverse mergers, and there can be no real dispute that "reverse mergers are a perfectly lawful securities marketing device."  *Garvey v. Arkoosh*, 354 F. Supp. 2d 73, 85 n.17 (D. Mass. 2005).  For instance, Muriel Siebert, the first woman to own a seat on the New York Stock Exchange, took her brokerage firm public in 1996 through a reverse merger with a small furniture company.  *Siebert Goes Public by an Unusual Route*, N.Y. Times, Feb. 3, 1996, § 1, at 39.  Ted Turner exchanged stock in his private billboard company for control of a public company and changed its name to Turner Communications Group.  Ted Turner & Bill Burke, *Call Me Ted* at 91-93 (2008).  Even the New York Stock Exchange itself went public through a reverse merger with Archipelago Holdings.  Serena Ng, *Moving the Market – Tracking the Numbers / Street Sleuth: Reverse Mergers Move Into Fashion – Small Companies Gobble Up Already-Public Concerns as Cheap Way to Get Listed*, Wall St. J., June 29, 2005, at C3.  (Fortinsky Decl., Exs. F-H.)

(collectively, the 'Sichuan Subsidiaries').*" (*Id.* at 13, n.17 (emphasis added).)  This is a colossal omission.  The financial statements of the Sichuan Subsidiaries (along with those of China XD's other subsidiaries in China) are consolidated into the financial statement in China XD's SEC filings.  (*See* 2013 10-K (attached as Exhibit E) at 3, 4, 43, 49, 55, F-9.)  In effect, then, the plaintiffs are comparing two materially different sets of financial statements—one complete, one incomplete—and attributing the differences between them to securities fraud by China XD and the other defendants.  This method of pleading is akin to the plaintiffs alleging that a statement that the current population of the United States is 319 million is false because, when one adds together the population of each of the states other than Minnesota, Washington, Louisiana and Ohio, the current population is only 290 million.  The plaintiffs' approach is flawed for several additional reasons.

*First*, the plaintiffs' omission of the SAIC filings of four companies is at odds with the plaintiffs' own recognition that the appropriate level of due diligence in China includes obtaining "the *entire* SAIC file." (Compl. ¶ 52 (emphasis added).)  The reason that a complete set of SAIC filings is necessary is that all of the individual SAIC filings must be added together in order to create a valid comparison to the consolidated financial statement in the SEC filings.  Otherwise one is comparing the proverbial apples and oranges.

*Second,* after acknowledging that the allegations in the Complaint are based on an incomplete set of China XD's SAIC filings, the plaintiffs hasten to add why they consider their omission to be inconsequential:

> The Sichuan Subsidiaries' function is to build a plant in Sichuan that China XD reports will become operational in 2015.  China XD broke ground on the Sichuan Plant in December 2013 and, according to CW 1, will not begin manufacturing until 2015.  Accordingly, the Sichuan Subsidiaries did not earn any revenues during the Class Period.

(Compl. at 13, n.17.)  But the statement that the Sichuan Subsidiaries "did not earn any revenues during the Class Period" is insufficient because it is merely an unsupported assumption.  *See Gallop v. Cheney*, 642 F. 3d 364, 369 (2d Cir. 2011) (holding that "unsupported assumptions" are insufficient to state a claim where the plaintiff fails to offer "a single fact to corroborate her allegation").

*Third*, the financial performance of the Sichuan Subsidiaries "during the Class Period" is beside the point.  The alleged Class Period is from March 25, 2014 to July 10, 2014 (*id.* ¶ 1), while the alleged misstatements relate to financial performance in 2013 and the first quarter of 2014, *i.e.*, up to March 31, 2014.  (*Id.* ¶ 33.)  Except for one overlapping week (March 25-31, 2014), the activity of the Sichuan Subsidiaries during the Class Period is entirely unrelated to the accuracy of the alleged misstatements.

*Finally,* even if the plaintiffs intended to refer to the Sichuan Subsidiaries' activity during the relevant reporting periods, as is likely, the assumption that the Sichuan Subsidiaries did not generate any revenue is gravely undermined by factual allegations elsewhere in the Complaint. The Complaint states that one of the plaintiffs' confidential witnesses (CW9), who was "responsible for HR" at the Sichuan Subsidiaries, said that employees at those companies "work six days a week" and "usually work unpaid overtime."  (*Id.* ¶¶ 24, 73, 75.)  According to another confidential witness (CW7), "about 30" R&D researchers worked at the Sichuan Subsidiaries. (*Id.* ¶ 70.)  In support of their assertion that the Sichuan Subsidiaries generated no revenue, the plaintiffs cite a single confidential witness (CW1) who is alleged to have stated that the Sichuan plant "will not begin manufacturing until 2015" (*id.* at 13, n.17), which says nothing about

whether any or all of the *four* Sichuan Subsidiaries generated any revenue.[6]  These allegations,

which are presumed to be true for purposes of this motion, seriously undermine the otherwise

unsupported assumption that the Sichuan Subsidiaries did not generate any revenue.[7]

This case is not the Court's first encounter with securities claims based on a comparison

of SEC and SAIC filings.  In *Ho v. Duoyuan Global Water, Inc.*, the plaintiffs alleged that the

SEC filings of a U.S.-listed Chinese company overstated the financial performance of two of its

subsidiaries on the basis that the corresponding SAIC filings of those two subsidiaries presented

significantly lower financial numbers.  887 F. Supp. 2d 547, 567-68 (S.D.N.Y. 2012) (Daniels,

J.).  The Court held that this allegation was sufficient to plead that the higher figures in the SEC

filings were false.  *Id*. at 568.  The critical difference, however, is that the plaintiffs in *Duoyuan*

*Global Water* were comparing matching sets of financial figures—namely, the SAIC filings for

the two subsidiaries in China and the part of the SEC filings relating only to those two

subsidiaries—which this Court held was "substantively appropriate."  *Id*. ("Although the SEC

filings were of DGW as a whole, Plaintiffs relied on the segment reporting of Duoyuan Langfang

and Duoyuan Beijing [*i.e.*, the two subsidiaries] in the IPO and SPO filings to compare them

with each of the subsidiaries' filings with the SAIC.  Thus, the comparison is substantively

appropriate.").  Here, by contrast, the plaintiffs are effectively comparing all of China XD's

subsidiaries to only some of those subsidiaries and concluding that the difference between

"some" and "all" somehow constitutes fraud.

---

[6]  It is equally implausible that all four Sichuan Subsidiaries—one of which has "Software Development" in its name—would be necessary to construct a plant.  The plaintiffs, however, make no effort to address these logical gaps.

[7]  The plaintiffs also characterize the Sichuan Subsidiaries as "inoperative."  (Compl. ¶ 70.)  It is difficult to imagine a company that is both inoperative and keeping employees busy "work[ing] six days a week" and "work[ing] unpaid overtime."  (*Id*. ¶ 73.)

Other courts have likewise required "apples-to-apples" comparisons when addressing SEC-to-SAIC comparisons, including comparisons in circumstances very similar to those here. In *In re A-Power Energy Generation Systems Limited Securities Litigation*, for instance, the plaintiffs compared a U.S.-listed Chinese company's SEC filings to an incomplete "compilation" of SAIC filings filed by the company's subsidiaries in China. No. MDL-11-2302-GW(CWx), 2012 WL 1983341, at *2 (C.D. Cal. May 31, 2012). Similar to the Complaint here, the complaint in *A-Power* alleged that the subsidiaries whose SAIC filings were omitted from the plaintiffs' comparison "'do not contribute significantly to the Company's financial results.'" *Id.* The court dismissed the case on the basis that it had "no way of knowing whether it was comparing apples-to-apples or apples-to-oranges." *Id.* at *8.

Likewise, in *In re L&L Energy, Inc. Securities Litigation*, the court dismissed the complaint because the plaintiff's analysis of SEC and SAIC filings made it "virtually impossible to determine whether the comparisons" the plaintiff drew in the complaint were "apples-to-apples." 908 F. Supp. 2d 1147, 1153 (W.D. Wash. 2012). The court pointed to the plaintiffs' omission of information regarding the SAIC filings, including reporting periods, accounting treatment and auditing requirements. *Id.* Here, the plaintiffs provide even less information than the plaintiffs in *L&L Energy* by excluding four subsidiaries altogether from their comparison.[8]

This is also not the first case where the plaintiffs plead that harsher penalties in China make it more likely that SAIC figures are accurate while the SEC figures are inflated, as the plaintiffs do here. (Compl. ¶¶ 47, 49-51.) Such generalized allegations have been found to be "entirely unpersuasive." *In re China Valves Tech. Sec. Litig.*, 979 F. Supp. 2d 395, 411

---

[8]   The Complaint contains extensive allegations concerning the differences (or lack thereof) between U.S. GAAP and PRC GAAP. (Compl. ¶¶ 55-61.) The plaintiffs' pleading deficiencies, however, are not related to accounting standards but rather to the fact that the plaintiffs are comparing all subsidiaries to some subsidiaries.

(S.D.N.Y. 2013) (pointing out that "[o]ne who submits false SEC filings face the risk of equally

if not more severe penalties, including possible imprisonment").  In rejecting such allegations,

the *L&L Energy* court reasoned that:

> [w]illful misstatements in an SEC filing may result in the temporary suspension of
> trading in a company's securities, injunctive relief, civil penalties, imprisonment
> for up to twenty years, and/or criminal fines up to $5,000,000 for individuals and
> $25,000,000 for corporations.  15 U.S.C. §§ 78*l*, 78u(d), 78ff(a).  The only
> reasonable inference is that corporations make false statements to both the SAIC
> and the SEC at their peril.  Individual actors apparently face far more significant
> penalties for false filings in the United States.

908 F. Supp. 2d at 1153-54.

The allegations premised on the plaintiffs' comparison of SEC and SAIC filings fall far

short of pleading a misstatement.

### B.   The Allegations Regarding China XD's R&D Capabilities And Work Force Fail To Allege A Material Misstatement

The plaintiffs claim that China XD's SEC filings overstate the Company's R&D

capabilities in China, primarily with respect to its R&D work force.  These allegations fall into

two categories.  The first relates to statements about the Company's "strong R&D capabilities,"

"advanced technologies" and "technological expertise."  (Compl. ¶¶ 40-43.)  The second

concerns China XD's statements about the number of employees in its R&D team in China.  (*Id.*

¶¶ 42, 44.)  None of the allegations in either category is sufficient to allege a misstatement by

China XD.

The Company's statements about its "strong R&D capabilities," "advanced technologies"

and "technological expertise" are quintessential examples of non-actionable puffery.  *See In re*

*Xinhua Fin. Media Ltd. Sec. Litig.*, No. 07 Civ. 3994, 2009 WL 464934, at *8 (S.D.N.Y. Feb. 25,

2009) (holding that adjectives such as "strong," "experienced," and "capable" are "nothing more

than puffery, which is nonactionable under the securities laws") (citing *Rombach v. Chang*, 355

F.3d 164, 174 (2d Cir. 2004)); *Lasker v. N.Y. State Elec. & Gas Corp.*, 85 F.3d 55, 59 (2d Cir.

1996); *see also Johnson v. Sequans Commc'ns S.A.*, No. 11 Civ. 6341 (PAC), 2013 WL 214297,

at *14 (S.D.N.Y. Jan. 17, 2013) ("statements that [defendant] 'believe[s] we have a strong

position in the WiMAX market,' and 'believe[s] we are better positioned to drive our roadmap to

meet those needs' are non-actionable"); *Zerger v. Midway Games, Inc.*, No. 07 C 3797, 2009

WL 3380653, at *6 (N.D. Ill. Oct. 19, 2009) ("[T]alk of 'strengthening' and 'facilitating' and

'adding depth' and 'expertise' falls far short of the threshold for concrete, materially false or

misleading statements.  Rather, these statements fall squarely within the category of '[v]ague

statements about industry leadership and unquantified growth [that] are classic puffery, and are

generally not actionable.'") (citation omitted).  In any event, China XD's 2013 10-K provides

support for its statements about the strength of its R&D capabilities, its "advanced technologies"

and its "technological expertise" when it notes that the government of China gave Xinda Group

the "Most Valuable High Tech in China" award.  (2013 10-K (attached as Exhibit E) at 39.)

> With respect to the Company's R&D work force, the plaintiffs' allegations are based on a
fundamental misreading of China XD's SEC filings.  The Complaint alleges that "China XD
claims in the 2013 10-K that the Xinda R&D Team included 237 professionals . . . as well as 12
consultants."  (Compl. ¶ 44.)  The plaintiffs also state that "China XD's 2014 10-Q claims that
the Xinda R&D Team included 243 professionals and 2 consultants."  (*Id*.)  But that is not what
the filings say.  The numbers of employees cited by the plaintiffs refer to all of the Company's
R&D teams in China, not merely those in the two subsidiaries included in the plaintiffs'
definition of "Xinda R&D Team" (*i.e.*, Xinda Material Research Center and Xinda Group
Technology Center).  (*Id*. ¶ 44; *see* 2013 10-K (attached as Exhibit E) at 2 (defining "our" as
"China XD Plastics Company Limited"—which includes all 16 subsidiaries of China XD

Plastics Company Limited—and disclosing that "[o]ur research and development (the "R&D")
team consists of 237 professionals and 12 consultants"); Q1 2014 10-Q, Fortinsky Decl. Ex. I at
15 (same, referring to "243 professionals and 2 consultants").)  Indeed, elsewhere in the
Complaint the plaintiffs allege that China XD hired R&D researchers in its Sichuan subsidiaries
in 2014.  (Compl. ¶ 21.)  Just as with their SEC-to-SAIC comparison, the plaintiffs have omitted
certain subsidiaries of China XD in their calculations and portrayed the omission as a fraud by
the Company instead of recognizing it as just a mistake by the plaintiffs themselves.  At the very
least, the plaintiffs have not alleged any facts to support their assumption that all of the
Company's R&D employees are employed only by the two subsidiaries included in the
plaintiffs' definition of the Xinda R&D Team, and the allegation therefore fails to identify a
misstatement.[9]

## II.     THE PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

By substituting a new set of allegations for the Bleecker Street Report's allegations
(which the plaintiffs relied on in their initial complaints), the plaintiffs have fatally undermined
their position on loss causation.  They no longer try to build their case on the substantive
allegations of the Bleecker Street Report.  Yet they continue to say that they were injured when
the Bleecker Street Report was issued and the price of the Company's stock then dropped.
Because the purported misstatements cited in the Complaint are not the same as those discussed
in the Report, the drop in the stock price after the Report was issued is irrelevant, and the

---

[9]     The confidential witnesses that the plaintiffs rely on conspicuously do not say that all of the Company's R&D
employees work for the two subsidiaries the plaintiffs identify.  Moreover, while the plaintiffs rely on three
confidential witnesses with the title of "R&D Director" (CW 1, CW4, and CW6) to support their allegations
concerning the R&D work force (Compl. ¶ 70), these individuals did not collectively have oversight over all of
China XD's R&D operations just because they each "[r]eport[] to China XD['s] R&D head."  (Compl. ¶ 24.)
Moreover, one of the three "R&D Directors" (CW 4) did not work at the Company during the period covered by
the 2013 10-K and 2014 10-Q.

plaintiffs cannot say that their losses were caused by the purported misstatements set forth in the Complaint.

To establish loss causation, a plaintiff must allege that when the alleged misstatements were revealed to the public, the market reacted negatively and caused the plaintiff to suffer a loss. *In re Winstar Commc'ns*, No. 01 Civ. 11522, 2006 WL 473885, at *14 (S.D.N.Y. Feb. 27, 2006) (Daniels, J.). The loss causation element is satisfied "only if the public disclosure causing injury *addressed the specific fact allegedly concealed*." *In re Rhodia S.A. Sec. Litig.*, 531 F. Supp. 2d 527, 545 (S.D.N.Y. 2007) (emphasis added) (citing *In re eSpeed, Inc. Sec. Litig.*, 457 F. Supp. 2d 266, 296 (S.D.N.Y. 2006)); *accord Lentell v. Merrill Lynch & Co.,* 396 F.3d 161, 173 (2d Cir. 2005) (holding that a plaintiff must show that the "'subject of the fraudulent statement or omission was the cause of the actual loss suffered'") (quoting *Suez Equity Invs., L.P. v. Toronto-Dominion Bank,* 250 F.3d 87, 95 (2d Cir. 2001)); *Williamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744, 751 (S.D.N.Y. 2011). The Complaint does not, and indeed cannot, plead loss causation.

The plaintiffs rely on the Bleecker Street Report, and only the Bleecker Street Report, to plead loss causation. (*See* Compl. ¶ 77-78.) In other words, the plaintiffs say that they lost money when Bleecker Street published the Report, because that is when the market supposedly learned that China XD's prior public statements were false. The Bleecker Street Report, then, was the "corrective disclosure" that allegedly divulged the truth to investors and resulted in a drop in the stock price. The problem for the plaintiffs is that they are alleging that they lost money as a result of alleged disclosures in July 2014 that are no longer relevant now that the plaintiffs have replaced their original allegations with new allegations that investors had no

knowledge of in July 2014 and were made public for the first time when the plaintiffs filed their

consolidated complaint in February 2015.

According to the Complaint, the Bleecker Street Report made the following claims about

China XD:

- China XD's profitability was suspiciously much higher than its competitors;

- China XD's R&D spending was too low to account for its purportedly much superior
  profitability; and

- China XD's 2008, 2009 and 2010 SAIC filings reported materially lower revenue, net
  income, and taxes paid than its SEC filings.

(*Id*. ¶ 77.)  The Bleecker Street Report did not mention, let alone reveal the purported falsity of,

China XD's statements about its revenues, profit or taxes for 2013 or the first quarter of 2014 or

the number of employees in the Company's R&D work force.  The Report therefore did not

reveal, and could not have revealed, the falsity of the alleged misstatements in the current

complaint.  *See In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 DLC, 2005 WL 375314, at *6

(S.D.N.Y. Feb. 17, 2005)  (citing *Lentell*, 396 F.3d at 175, n.4) ("A concealed fact cannot cause a

decrease in the value of a stock before the concealment is made public").[10]

In similar circumstances, courts have dismissed securities fraud complaints where the

alleged corrective disclosure did not disclose the specific facts alleged to be false and

misleading.  For example, in *Prime Mover Capital Partners, L.P. v. Elixir Gaming Technologies,*

*Inc.*, the court dismissed the plaintiffs' complaint and held that "[b]ecause the alleged 'truth'

about these misstatements never was alleged to have reached the market, they could not have

---

[10]   Although the original Report alleged that the Company's R&D spending was too low to explain China XD's
strong profits, it did not allege (as the Complaint now does) that the R&D work force was overstated in the
Company's SEC filings.  Indeed, the Report's references to R&D spending were almost the opposite of what
the plaintiffs are now saying.  Whereas Bleecker Street accepted the Company's statements about R&D
spending, which it characterized as "relatively miniscule" in order to cast doubt on the Company's profits, the
plaintiffs now are contending that the statements about its R&D work force are too *high* in comparison to what
the plaintiffs contend is the actual staffing.

caused a decline in [defendant's] stock."  898 F. Supp. 2d 673, 686 (S.D.N.Y. 2012), *aff'd* 548 F. App'x 16 (2d Cir. 2013).  Likewise, in *Alaska Laborer Employers Retirement Fund v. Scholastic Corporation*, this Court dismissed the plaintiffs' complaint for failure to allege loss causation because "a particular corrective disclosure constitutes a sufficient foundation for loss causation allegations only if it somehow reveals to the market that a defendant's prior statements were not entirely true or accurate."  No. 07 Civ. 7402, 2010 WL 3910211, at *6 (S.D.N.Y. Sept. 30, 2010) (Daniels, J.) (citing *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 283 (S.D.N.Y. 2008)).  As in *Prime Mover Capital Partners* and *Alaska Laborer Employers Retirement Fund*, the truth about the statements challenged in the Complaint was never "alleged to have reached the market" and the corrective disclosure in question—namely, the Bleecker Street Report—did not "reveal[] to the market" that the prior statements challenged in the Complaint "were not entirely true or accurate."  898 F. Supp. 2d at 686; 2010 WL 3910211, at *6.

Because the plaintiffs point to no event that caused their alleged loss other than the Bleecker Street Report, and because the Bleecker Street Report did not address the alleged misrepresentations, the plaintiffs have failed to plead the required element of loss causation. Their claim fails as a matter of law.

## III.   THE PLAINTIFFS FAIL TO PLEAD FRAUDULENT INTENT

At best, the plaintiffs do nothing more than point to alleged inaccuracies in the Company's SEC filings.  They are a long way from demonstrating that anyone at the Company acted with fraudulent intent.  Miscounting the number of employees in the research department hardly constitutes fraud.

To plead fraudulent intent (or "scienter"), the plaintiffs must "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind" as to each alleged false statement.  15 U.S.C. § 78u-4(b)(1)-(2) (emphasis added).  The plaintiffs

must therefore allege facts showing either (1) strong circumstantial evidence of conscious misbehavior or recklessness, or (2) that the defendant had both motive and opportunity to commit fraud.  *Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004).  A complaint will survive a motion to dismiss only "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  Allegations of motives that are "possessed by virtually all corporate insiders, including:  (1) the desire to maintain a high corporate credit rating, or otherwise sustain the appearance of corporate profitability, or of the success of an investment; and (2) the desire to maintain a high stock price in order to increase executive compensation or prolong the benefits of holding corporate office," are insufficient to plead fraudulent intent as a matter of law.  *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000) (internal citations and quotations omitted); *accord Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001); *In re PXRE Group, Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 530-2 (S.D.N.Y. 2009), *aff'd sub. nom. Condra v. PXRE Grop Ltd.*, 357 F. App'x 393 (2d Cir. 2009) (collecting cases); *accord Alaska Laborer Emp'rs. Ret. Fund v. Scholastic Corp.*, No. 07 Civ. 7402, 2010 WL 3910211, at *8 (S.D.N.Y. Sept. 30, 2010) (Daniels, J.) ("If scienter could be pleaded solely on the basis that defendants were motivated because an inflated stock price or improved corporate performance would increase their compensation, 'virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions'") (quoting *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.,* 553 F.3d 187, 201 (2d Cir. 2009)).  The plaintiffs do not pass this test because their allegations of fraudulent intent are virtually nonexistent.

First, the plaintiffs allege that this "is not the first time that China XD committed fraud," citing to a 2011 report by a "short seller" that was cited in the Bleecker Street Report.  (Compl. ¶ 79.)  The plaintiffs cannot plead fraudulent intent *with particularity* (as they must under the PSLRA and Rule 9(b) of the Federal Rules of Civil Procedure) by pointing to another party's unproved allegations of fraud in the past with respect to a completely different set of statements. In referring to this past report, the plaintiffs are simply trying to do whatever they can to skirt the heightened pleading requirements of the PSLRA and Rule 9(b).

Next, the plaintiffs allege that China XD rapidly expanded at great expense and, because it is "a marginal modified plastics producer," it could not rely on "the minimal cash its operation generates to fund its expansions."  (Compl. ¶¶ 80-81.)  They say that this combination of rapid expansion with minimal cash resulted in China XD's becoming heavily indebted to local banks in excess of its market capitalization.  (*Id*. ¶ 81.)  Because of this indebtedness, China XD allegedly wanted to raise money through a bond offering in February 2014, which, according to the plaintiffs, provided a "potent motive to inflate China XD's financial performance to complete the Offering."  (*Id*. ¶ 82.)  This motive is precisely the "desire to . . . sustain the appearance of corporate profitability" that the Second Circuit has repeatedly found insufficient to plead fraudulent intent.  *See Novak v. Kasaks*, 216 F.3d at 307 (citing cases).  Moreover, the plaintiffs allege that the bond offering closed in February 2014 (Compl. ¶ 82), which is *before* the alleged misstatements were made in March and May of 2014.  The alleged misstatements thus could not have been driven by a desire to successfully complete the bond offering.

The plaintiffs have failed to plead any facts whatsoever even suggesting fraudulent intent, let alone facts giving rise to the necessary strong inference.  Even if the plaintiffs' claims were

not already fatally wounded by their failure to allege falsity and loss causation, this hole in their case would be enough by itself to justify the dismissal of the Complaint as to all claims.

## CONCLUSION

For the foregoing reasons, China XD respectfully requests that this Court dismiss the Complaint, in its entirety, with prejudice.

Dated:   New York, New York
         April 3, 2015

SHEARMAN & STERLING LLP


By:     /s/ Jerome S. Fortinsky
        Jerome S. Fortinsky
        Brian G. Burke
        Marion R. Harris
        599 Lexington Avenue
        New York, New York 10022
        Tel.:  212-848-4000
        Fax:  212-848-7179
        jfortinsky@shearman.com
        brian.burke@shearman.com
        marion.harris@shearman.com

        *Attorneys for Defendant*
        *China XD Plastics Company Limited*